**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**


| | | |
|---|---|---|
| MAUTIOUS D. WISE, | : | CIVIL ACTION NO. |
| DEVONTA J. WISE, | : | 2:12-CV-00291-RWS-JCF |
| RUSSELL B. GREEN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| STEVE CRONIC, | : | PRISONER CIVIL RIGHTS |
| in his official capacity as | : | 42 U.S.C. § 1983 |
| Hall County Sheriff, | : | |
| MARK BANDY, | : | |
| in his individual capacity, | : | |
| DUSTIN CHARLTON, | : | |
| in his individual capacity, et al., | : | |
| | : | |
| Defendants. | : | |

**MAGISTRATE JUDGE'S NON-FINAL
REPORT AND RECOMMENDATION**

Now before the Court are Sheriff Cronic's Motion for Judgment on the

Pleadings (Doc. 16) and Plaintiffs' Motion for Leave to Amend Complaint (Doc.

20).  For the reasons set forth below, it is **RECOMMENDED** that Sheriff Cronic's

motion for judgment on the pleadings (Doc. 16) be **GRANTED** and that Plaintiffs'

motion for leave to amend (Doc. 20) be **GRANTED in part** and **DENIED in part**.

## BACKGROUND and PROCEDURAL HISTORY[1]

On December 22, 2010, Plaintiffs Mautious D. Wise, Devonta J. Wise, and Russell B. Green were transported from the Fulton County Jail ("FCJ") to the Hall County Detention Center ("HCDC") because the FCJ was over capacity.  (Doc. 1 at ¶¶ 13-15).  Along with the other detainees in the vehicle, Plaintiffs "were denied water and bathroom breaks during this trip," and "Hall County employees" called them "niggers" and "trash that Fulton County did not want."  (*Id.* at ¶¶ 16, 18-19).

Upon arrival at the HCDC, Plaintiffs and the other detainees were "threatened by Hall County personnel with dogs" and then were placed in an activity room, where they requested water and bathroom access.  (*Id.* at ¶¶ 20-22).  HCDC personnel, including Bandy and Charlton, "both of whom are White," became "agitated by such requests and while the detainees were still hand-cuffed, . . . beat and kicked the detainees including the Plaintiffs, pepper-sprayed them and then placed them into solitary confinement with no medical treatment."  (*Id.* at ¶ 23).  "Plaintiff Green was also hog tied and put outside for approximately 7 to 10

---

[1] Given the current procedural posture of this matter, the background reflects the allegations in Plaintiffs' Complaint.  (Doc. 1).

2

hours in cold weather before being placed into solitary confinement with no medical treatment." (*Id.* at ¶ 24). Plaintiffs did "[e]ventually" receive medical treatment for their injuries. (*Id.* at ¶ 26).

On December 14, 2012, Plaintiffs filed a Complaint against Cronic, Bandy, and Charlton. (*Id.* at ¶ 29 *et seq.*). They assert three federal constitutional claims via 42 U.S.C. § 1983 (*id.* at ¶¶ at 52-58): (1) retaliation for exercising their First Amendment right to grieve the conditions of their confinement (*id.* at ¶¶ 29-35); (2) cruel and unusual punishment in violation of the Eighth Amendment (*id.* at ¶¶ 36-40); and (3) excessive force and mistreatment based on race, in violation of their Fourteenth Amendment rights as pre-trial detainees (*id.* at ¶¶ 41-51). They also assert an assault and battery claim under O.C.G.A. § 51-1-14. (*Id.* at ¶¶ 61-66). Plaintiffs sue Cronic in his official capacity as Hall County Sheriff and Bandy and Charlton in their individual capacities as current (Bandy) and former (Charlton) employees of the Hall County Sheriff's Office ("HCSO"). (*Id.* at 1 (caption)). Plaintiffs allege that "[i]n discriminating against [them], Defendants acted pursuant to a policy, custom and/or practice of the Hall County Sheriff's Office." (*Id.* at ¶ 55). By way of relief, they seek a permanent injunction against racial discrimination by the HCSO and its employees, twenty million dollars in

damages, and attorney's fees.  (*Id.* at ¶ 16-17; *see id.* at ¶¶ 59-60).  On January 4, 2013, Charlton filed his answer to Plaintiffs' Complaint.  (Doc. 5).  Cronic and Bandy filed their answers on January 25, 2013.  (Docs. 11-12).

On February 22, 2013, Cronic filed his motion for judgment on the pleadings (Doc. 16) and a motion to stay discovery (Doc. 17).  The Court stayed discovery pending the disposition of the motion for judgment on the pleadings on March 13, 2013.  (*See* Docket Sheet, Minute Entry, Mar. 13, 2013).

Shortly thereafter, Plaintiffs filed a Motion For Leave to Amend Complaint (Doc. 20) and an Amended Complaint (Doc. 21).  In the Amended Complaint, Plaintiffs reassert all the claims in the original Complaint and seek to add Cronic as a defendant in his individual capacity and to add Bandy and Charlton as defendants in their official capacities.  (Doc. 21 at ¶ 13).  They also allege new state-law claims against all Defendants.  (*Id.* at ¶¶ 78, 85, 93).  Defendants responded to the motion to amend on April 11, 2013.  (Docs. 25-27).  Plaintiffs did not reply. Briefing is now complete, and the undersigned turns to the merits of the motions.

## DISCUSSION

**I.    Defendant Cronic's Motion for Judgment On The Pleadings**

    **A.    Potential § 1983 Liability Of A Georgia Sheriff**

To evaluate Cronic's motion, the undersigned first assesses his potential liability under § 1983.  In most instances, a Georgia Sheriff enjoys Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against him in his official capacity.  *See Purcell v. Toombs County*, 400 F.3d 1313, 1325 (11th Cir. 2005) (concluding that Georgia sheriff "functions as an arm of the State [not the County] when promulgating policies and procedures governing conditions of confinement" at county jail, and, therefore, sheriff was "entitled to Eleventh Amendment immunity from [a] suit [for money damages] in his official capacity").  The Eleventh Circuit has not so ruled with respect to Georgia deputy sheriffs or jail administrators.  *See id.* at 1325 n.27 (declining to address potential Eleventh Amendment immunity of jail administrator because issue was not raised on appeal).

Nevertheless, "a suit alleging a violation of the federal constitution against a state official in his official capacity [seeking prospective] injunctive relief . . . is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment."  *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  In addition, the Eleventh Amendment does not protect a state official from claims brought against him in his individual capacity.  *See Hafer v. Melo*, 502 U.S. 21, 30-

5

31 (1991) (holding that "the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983" and that "state officers [are not] absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts" (internal quotations omitted)).

Furthermore, "[t]he Northern District of Georgia's decision in [*Dukes v. Georgia*, 428 F. Supp. 2d 1298 (N.D. Ga. 2006)], as well as the Eleventh Circuit's decision in [*Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003),] suggest that in providing medical care for jail inmates, a sheriff acts as an arm of the county." *Hooks v. Brogdon*, No. 07–42, 2007 U.S. Dist. LEXIS 72585, at *4 (M.D. Ga. Sept. 29, 2007); *see also Sanders v. Langley*, 1:03-cv-1631-WSD, 2006 U.S. Dist. LEXIS 21180, at *29-32 (N.D. Ga. Mar. 29, 2006) (denying Eleventh Amendment immunity to Georgia sheriff on prisoner's claims of deliberate indifference to his serious medical needs); *Dukes*, 428 F. Supp. 2d at 1321-1322 ("conclud[ing] that Defendant [Sheriff] was not acting as an 'arm of the state' when caring for the medical needs of Plaintiff," and thus was "not entitled to sovereign immunity in his official capacity"); *Manders*, 338 F.3d at 1323 ("conclud[ing] that Sheriff [] in his official capacity is an arm of the State, not [the] County, in establishing use-of-

force policy at the jail and in training and disciplining his deputies in that regard";
but noting that "this case does not involve medical care, which counties have a
statutory obligation to provide to inmates in county jails" under O.C.G.A. § 42-5-
2).  A county official may be held liable in his official capacity if a constitutional
violation resulted from (1) "an action taken or policy made" by a final policymaker
for the county in the "area of [its] business" that is at issue, or (2) "a practice or
custom that is so pervasive, as to be the functional equivalent of a policy adopted
by the final policymaker."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th
Cir. 1995); *see Monell*, 436 U.S. at 690 n.55, 694 (noting that "official-capacity
suits generally represent only another way of pleading an action against an entity
of which an officer is an agent," and stating that a local government may be held
liable under § 1983 "when execution of [its] policy or custom, whether made by its
lawmakers or by those whose edicts or acts may fairly be said to represent official
policy, inflicts the injury").

It appears from the foregoing that the only federal claims in the original
Complaint that Plaintiffs may bring against Cronic are (1) claims against him in his
official capacity seeking *prospective* relief based on an HCSO policy or custom to
deny HCDC detainees their constitutional rights, with respect to which claims

7

Cronic does not enjoy Eleventh Amendment immunity; and (2) claims against him in his official capacity seeking either retrospective or prospective relief based on an HCSO policy or custom to deny medical care to HCDC detainees, because in providing that care a Georgia sheriff may be deemed a county rather than a state official.  As set forth below, Plaintiffs' claims against Cronic fail because they have not alleged facts sufficient to sustain a claim on any of the foregoing bases.

### B.    Is Cronic Entitled to a Judgment on the Pleadings?

Cronic asserts that a judgment on the pleadings is proper as to all of Plaintiffs claims against him "because plaintiffs' complaint does not contain any factual allegations with regard to [him] in his official capacity which could warrant judgment in plaintiffs' favor against him."  (Doc. 16-1 at 2).  "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  "Judgment on the pleadings is appropriate when no material facts are in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Scottsdale Ins. Co. v. Pursley*, 487 Fed. Appx. 508, 510 (11th Cir. 2012) (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).  A court should "accept all the facts in the complaint as true and view them in the light most favorable to the

nonmoving party." *Id.* (citing *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010)).

"[U]nder Rule 12(b)(6) or Rule 12(c), the question [is] the same: whether the [complaint] stated a claim for relief." *Sampson v. Wash. Mut. Bank*, 453 Fed. Appx. 863, 865 n.2 (11th Cir. 2011) (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)). "To survive a motion to dismiss [under FED. R. CIV. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Id.* at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotations omitted).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  If a plaintiff fails to satisfy these pleading requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal.  *See Chappell v. Rich*, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming district court's dismissal of § 1983 complaint because plaintiffs' factual allegations were insufficient to support asserted constitutional violation); *see also L.S.T., Inc. v. Crow*, 49 F.3d 679, 683-84 (11th Cir. 1995) (noting that "[i]t is well-established that . . . conclusory allegations are insufficient to state a § 1983 claim for relief").

Here, Plaintiffs have failed to provide sufficient factual allegations to state a § 1983 claim against Cronic.  They allege that Bandy and Charlton acted pursuant to an HCSO policy, custom, or practice, which would implicate Cronic in his official capacity, and possibly in his individual capacity as well, but offer nothing more than a bare, conclusory allegation that such a policy or custom existed in

10

December 2010.   As Cronic correctly points out, the "entirety" of Plaintiffs' official capacity claim against him "rests on the single, unadorned assertion" that " 'Defendants' acted pursuant to an unidentified 'policy, custom and/or practice' " of the HCSO.   (Doc. 16-1 at 10; *see* Doc. 1 at ¶ 55).   Indeed, the only factual allegation that could arguably provide any support for this theory of recovery suffers from a fatal flaw.   Plaintiffs allege a similar occurrence involving Charlton took place in December 2012, but this other alleged event occurred two *years* after the incident at issue and therefore does not support a reasonable inference that Charlton acted pursuant to a policy in 2010.

In addition, Cronic enjoys Eleventh Amendment immunity from any of Plaintiffs' claims for retrospective relief that implicate his "establishing use-of-force policy at the [HCDC] and [his] training and disciplining his deputies in that regard."   *Manders*, 338 F.3d at 1328.   Moreover, although Plaintiffs' claims for prospective relief may proceed against Cronic in his capacity as a state official despite his Eleventh Amendment immunity, these claims are mooted by Plaintiffs' release from the HCDC.   *See McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a

jail moots his individual claim for declaratory and injunctive relief."); *accord Mann v. McNeil*, 360 Fed. Appx. 31, 32 (11th Cir. 2010).

Plaintiffs concede that "[i]f Defendant Cronic was acting as an arm of the state rather than the county, he very well may not be a 'person' subject to suit under 42 U.S.C. § 1983," but they argue that they have sued Cronic "in his capacity as a representative of Hall County rather than the State of Georgia" by alleging in their complaint "that they were denied prompt and adequate <u>medical treatment</u> by Defendants." (Doc. 19 at 6-7). As noted above, such a claim may well be viable against a Georgia sheriff even when a plaintiff seeks retrospective relief. Nevertheless, "to impose § 1983 liability on a municipality [via an official capacity claim against an official of that municipality], a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A plaintiff seeking to hold a municipality liable under § 1983 must identify a municipal policy or custom that caused [his] injury. [A] custom [is] a practice that is so settled and permanent that it takes on the force of the law. In

order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id.* at 1290 (citations and internal quotations omitted). This standard "prevents the imposition of liability based upon an isolated incident." *Id.* (quoting *Depew v. City of St. Marys*, 787 F.2d 1496 (11th Cir. 1986), to effect that "[n]ormally, random acts or isolated incidents are insufficient to establish a custom or policy"). "Rather, the incident must result from a demonstrated practice." *Id.*

Although Plaintiffs are not required at this stage of the proceedings to prove their allegation of a policy, custom, or practice to deny necessary medical care to HCDC inmates, they may not proceed with their claims against Sheriff Cronic based entirely on speculation and the hope that they will later discover facts to support their medical-care claims. *See Iqbal*, 556 U.S. at 678-79. Therefore, their original Complaint fails to state a claim for relief against Sheriff Cronic under 42 U.S.C. § 1983.

As to Plaintiffs' state-law battery claim:

The doctrine of sovereign immunity, which the Sheriff has raised as a defense, bars any claims against him in his official capacity. Under the Georgia Constitution, as amended in 1991, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically

13

> provides that sovereign immunity is thereby waived and the extent of such waiver. *Sovereign immunity has been extended to counties and thus protects county employees who are sued in their official capacities, unless sovereign immunity has been waived. Any waiver of sovereign immunity must be established by the party seeking to benefit from that waiver.*

*Butler v. Carlisle*, 683 S.E.2d 882, 887 (Ga. App. 2009) (concluding that because plaintiff "has not shown that an Act of the General Assembly specifically waived the sovereign immunity protecting the Sheriff[,] . . . the trial court did not err in granting summary judgment to the Sheriff as to any claims asserted against him in his official capacity" (footnotes and internal quotations omitted) (emphasis added)); *see also Seay v. Cleveland*, 508 S.E.2d 159, 161 (Ga. 1998) (plaintiffs' "claim against [Sheriff] in his official capacity for the negligent supervision of his deputies fails on sovereign immunity grounds," because "[a]lthough [he] might be held liable for negligent supervision had he been sued in his personal capacity, sovereign immunity acts as a bar to such claims against a sheriff in his official capacity unless sovereign immunity has been waived" (citation omitted)). Because Plaintiffs have offered no evidence of a waiver of the sovereign immunity protecting Cronic in his official capacity from state-law claims, Plaintiffs' state-

14

law battery claim against Cronic in his official capacity, like their § 1983 claims, fails on the pleadings.

Accordingly, **IT IS RECOMMENDED** that Cronic's motion for judgment on the pleadings be **GRANTED**.

## II.     Plaintiff's Motion for Leave to Amend

Plaintiffs move to amend their complaint under Rule 15 to add Cronic as a Defendant in his individual capacity; to add Bandy and Charlton as Defendants in their official capacities; and to add new state-law claims against all Defendants. (*See* Doc. 21).  They argue that granting them leave to amend will not unduly burden Defendants at this early stage of the proceedings—in which discovery was stayed on March 13, pending the resolution of Cronic's February 22 motion for judgment on the pleadings—and that their amendment is not futile because they have stated viable claims against all three Defendants.  (*Id.* at 6-8; *see id.* at 4).

Federal Rule of Civil Procedure 15(a)(1)(B)(2) provides that when, as here, a party may no longer amend its pleading as a matter of course, a "court should freely give leave when justice so requires."  *See Dysart v. BankTrust*, No. 12-13653, 2013 U.S. App. LEXIS 7543, at *9 (11th Cir. Apr. 16, 2013).   The Eleventh Circuit has "recognized, however, that 'a district court may properly deny

15

leave to amend the complaint under Rule 15(a) when such amendment would be futile.' " *Id.* at *9-10 (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004)).  " '[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.' " *Id.* at 10 (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

Yet without "a substantial reason" for denying a motion to amend, a federal district court lacks the discretion to do so, although it may deny leave to amend "on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (internal quotations omitted).  "The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." *Id.* (internal quotations omitted).

## A.    Plaintiffs' Claims Against Cronic

Cronic argues that Plaintiffs' motion for leave to amend should be denied because the proposed amendments to add him as a defendant in his individual capacity under § 1983 and to add new state-law claims against him are "both

16

futile" and thus unwarranted under Rule 15(a).   (Doc. 25 at 2-3 *et seq.*).   The undersigned agrees.

With respect to individual-capacity claims, the Eleventh Circuit has noted the well-established rule "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability," and has stated that, instead, a supervisor is individually liable only when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).   This causal connection can be established by showing that (1) the supervisor knew about and failed to correct a widespread history of abuse, or (2) he had a custom or policy that resulted in a constitutional violation, or (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotations omitted); *see Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (stating that "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take

17

corrective action"). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone*, 326 F.3d at 1360.

A review of the additional claims against Cronic in the proposed Amended Complaint demonstrates that amendment would be futile. Plaintiffs have not alleged that Cronic was personally involved in the incident on December 22, 2010, and therefore they have offered no support for a claim against him in his individual capacity based on that incident alone. Plaintiffs also have failed to establish in their amended complaint a sufficient basis for suing Cronic in his individual capacity as a supervisor or in his official capacity based on a policy or custom of physically abusing African-American detainees at the HCDC and of denying them medical care for the injuries they might have sustained during that abuse. And finally, Plaintiffs have alleged no facts to support their state-law claims that Cronic was negligent in hiring Bandy and Charlton because he reasonably should have foreseen, based on their "tendencies and propensities," that they would mistreat HCDC inmates. Similarly there are no facts alleged to suggest that he was negligent for not terminating Bandy and Charlton, or at least for not training them

properly.  (*See* Doc. 21 at ¶¶ 86-92).  Plaintiffs' motion to amend should therefore be denied as to Cronic.

### B.    Plaintiffs' Claims Against Bandy And Charlton

Plaintiffs seek to add Bandy and Charlton as Defendants in their official capacity and to add state-law claims against them alleging denial of medical care and infliction of emotional distress.  (*See* Doc. 21).  As noted above, Plaintiffs have provided no support for their allegations regarding an official HCSO policy or custom as the cause for the alleged violations of their rights.  Therefore, their motion to add claims against Bandy and Charlton in their official capacities should be denied for the same reason that their claims against Cronic in his official capacity should be dismissed.

As for the new state-law claims, Charlton argues that such claims should be dismissed because the statutes of limitations have run and Plaintiffs have not demonstrated that the claims "relate back" to the date of the original Complaint. (Doc. 27 at 2).  The undersigned disagrees.  According to Rule 15, "an amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading."  FED. R.

19

CIV. P. 15(c)(1)(B).  The new state-law claims that Plaintiffs allege against Bandy and Charlton arise from the same conduct set out in the original pleading – the alleged mistreatment of Plaintiffs by Hall County employees during and after their transfer to the HCDC.  (*See generally* Docs. 1, 21).  Accordingly, Plaintiffs should be allowed to amend their complaint to add their state-law claims against Bandy and Charlton regarding the denial of medical care and the infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Cronic's Motion for Judgment on the Pleadings (Doc. 16) be **GRANTED** and that Cronic be **DISMISSED** as a Defendant from this action.

It is further **RECOMMENDED** that Plaintiffs' Motion for Leave to Amend Complaint (Doc. 20) be **GRANTED in part** to allow them to bring additional state-law claims against Defendants Bandy and Charlton—alleging denial of medical care (Doc. 21 at ¶¶ 78-84) and intentional and negligent infliction of emotional distress (*id.* at ¶¶ 93-103)—and be **DENIED in part** with respect to the state-law claims alleged against Defendant Cronic (*id.* at ¶¶ 85-92) and their attempt to add Bandy and Charlton as defendants in their official capacities (*id.* at ¶

20

13); that Paragraphs 13 and 85-92 be **STRICKEN** from the amended complaint (Doc. 21); and that the amended complaint, as redacted (Doc. 21), be **SUBSTITUTED** for the original complaint in this action.

     **SO RECOMMENDED** this  14th  day of  June , 2013.

             /s/  *J. CLAY FULLER*
            J. CLAY FULLER
            United States Magistrate Judge