IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| MAUTIOUS D. WISE, et al., | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | 2:12-CV-00291-RWS-JCF |
| | : | |
| v. | : | |
| | : | |
| MARK BANDY, | : | PRISONER CIVIL RIGHTS |
| DUSTIN CHARLTON, et al., | : | 42 U.S.C. § 1983 |
|     Defendants. | : | |

## MAGISTRATE JUDGE'S SECOND NON-FINAL REPORT AND RECOMMENDATION

Defendants Charlton and Bandy seek partial summary judgment against Plaintiff Mautious D. Wise. **IT IS RECOMMENDED** that their motions (Docs. 37, 38) be **DENIED**.

## I. Background

Plaintiff Wise and his co-plaintiffs have raised several claims for relief against Defendants Charlton and Bandy based on an incident at the Hall County Detention Center ("HCDC") on December 22, 2010. Wise claims, *inter alia*, that Defendants used excessive force against him during that incident. (*See* Doc. 1 (complaint); Doc. 30 at 2-3; Doc. 32 (amended complaint)). Defendants move for partial summary judgment based on a Covenant Not to Sue that Wise purportedly signed on October 18, 2011:

> The defendant Mautious Wise, pursuant to a negotiated disposition of two indictments (2011CR314C1, to which defendant entered a guilty plea on October 18, 2011) and the present indictment (to which a nolle prosequi is entered), hereby agrees and covenants that he will under no circumstances pursue a civil suit against the Sheriff of Hall County, or any of his employees or assigns for any incident or event occurring at the Hall County Jail from the date of the beginning of the incarceration of Mautious Wise at said jail up and through the date of this covenant not to sue. This document shall be delivered to Steve Cronic, Sheriff of Hall County, Georgia, and to Bill Blalock, County Attorney, for inclusion in their files.

(Doc. 37-2 at 16 (Ex. C, Statement Undisputed Material Facts Supp. Def. Charlton's Mot. Partial Summ. J.); *see* Doc. 37 (Charlton's Mot. Partial Summ. J.); Doc. 37-1 (Charlton's Br. Supp. Mot. Partial Summ. J.)).[1]

Plaintiff and his two co-plaintiffs filed their original complaint on December 14, 2012. (Doc. 1). Bandy raised the defense of release in his January 25, 2013 answer to that complaint. (Doc. 12 at 23 ("For a seventh defense, [Bandy] shows that some or all of . . . plaintiffs' claims are barred by the principles of waiver, accord and satisfaction and release.")). On July 16, 2013, the Court granted in part the Plaintiffs' motion to file an amended complaint; ordered Bandy and Charlton to answer the

---

[1]Bandy's summary judgment pleadings basically only incorporate Charlton's by reference, so the Court refers here only to Charlton's pleadings. (*See* Doc. 38 (Bandy's Mot. Summ. J.) at 2-3; Doc. 38-1 (Bandy's Mem. Law Supp.) at 1-2, in which Bandy "incorporates by reference, as if fully set forth herein, the brief submitted by Charlton in support of his motion for partial summary judgment"; Doc. 38-2 (Bandy's Statement of Undisputed Material Facts) at 2, in which Bandy states that on December 22, 2010, he was a Captain in the Hall County Sheriff's Office, but otherwise "incorporates by reference, as if fully set forth herein, the statement of undisputed material facts submitted" by Charlton).

2

amended complaint, as redacted, within fourteen days; and ordered discovery to begin thirty days after the first answer. (Docs. 32-33). Charlton filed his answer on July 31, stating as his Second Defense:

> Plaintiff Mautious D. Wise's claims against [Charlton] are barred by virtue of his execution of a covenant not to sue under which [he] agreed to forego the institution of any and all civil actions for the redress of any claims or events occurring during the period of time [he] was incarcerated at the Hall County Jail, including the occurrence which is the subject of this action.

(Doc. 35 at 2). Bandy raised the defense of release again on August 1 in his answer to the amended complaint. (Doc. 36 at 35). Charlton filed his summary judgment motion on August 6 (Doc. 37) and Bandy filed his on August 9 (Doc. 38).[2]

---

[2] "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." FED. R. CIV. P. 8(c); *see Melanson v. Browning-Ferris Indus.*, 281 F.3d 272, 276 (1st Cir. 2002) (stating, in employment context, "Waiver and releases are affirmative defenses on which the employer bears the burden. FED. R. CIV. P. 8(c). It is incumbent upon the employer to establish that the release was knowing and voluntary."). The parties do not dispute that Wise's covenant not to sue, if enforceable, constitutes an affirmative defense. (*See* Doc. 40 at 3-4; Doc. 46 at 4-6 & n.1; Doc. 48 at 1-7 (in his Reply, Charlton assumes, for the sake of argument at least, that "execution of the covenant not to sue amounts to an affirmative defense")). Although Wise argues that Bandy has waived the defense (*see* Doc. 46 at 4-6 & n.1), the Eleventh Circuit has "recognized . . . that a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff." *Edwards v. Fulton County*, 509 Fed. Appx. 882, 887 (11th Cir. 2013). "And it is settled that a plaintiff is not prejudiced by a defendant's failure to comply with Rule 8(c) if the plaintiff is provided notice of the affirmative defense by some other means." *Sweet v. Sec'y, Dep't of Corrections*, 467 F.3d 1311, 1321 n.4 (11th Cir. 2006) (noting that "the state raised the affirmative defense in its summary judgment motion only 36 days after its first pleading, and [the plaintiff] was given every opportunity to respond"). Here, Wise was on notice by January 25, 2013 that release would be a defense to some or all of his claims; by July 31, 2013, thirty days before the start of discovery, that Charlton would assert Wise's covenant not to sue as a defense; and by August 9 that Bandy would do the same. Thus, to the extent that Wise still argues that one or both of the motions for partial summary judgment should be denied based on a waiver of the affirmative defense (*see* Doc. 40 at 3-4; Doc. 46 at 4-6), that argument fails.

3

## II. The Standards For Summary Judgment Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[Former] Rule 56(c) [now Rule 56(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

4

*Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

The movant bears the initial burden of demonstrating that summary judgment is warranted. *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). When the ultimate burden of proof on the summary judgment issue lies with the nonmoving party, as is typically the case, the movant may demonstrate that summary judgment is warranted by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant has properly supported the summary judgment motion, the nonmovant then must "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in the non-movant's favor. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "non-moving party must come forward with *significant, probative evidence*" (emphasis added)). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

When a movant seeks summary judgment based on an affirmative defense, however, the burden of proof on the summary judgment issue shifts to the movant.

The standard for a motion for summary judgment differs depending on

5

whether the party moving for summary judgment also bears the burden of proof on the relevant issue.  As the United States Court of Appeals for the Sixth Circuit has noted:

> When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial.  But where the moving party has the burden—the plaintiff on a claim for relief or *the defendant on an affirmative defense*—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.

*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) [(internal quotations omitted)].  "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.' " *Franklin v. Montgomery County, Md.*, DKC 2005-0489, 2006 U.S. Dist. LEXIS 68476, at *16 (D. Md. Sept. 13, 2006) (quoting *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999)) (alteration in original).

*United States v. 11,320.00 in United States Currency*, 880 F. Supp. 2d 1310, 1322 (N.D. Ga. 2012) (citations altered) (emphasis added).

A motion for summary judgment may be supported or opposed with the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "As a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604

6

n.4 (11th Cir. 1985).

## III. The Undisputed Facts

Defendants have submitted the following documents, which are the only materials now before the Court on their motions for partial summary judgment:

1. a certified copy of Wise's May 2, 2011 indictment (Doc. 37-2 at 5-7 (Ex. A));

2. the October 18, 2011 Nolle Prosequi on the May 2 indictment (*id.* at 8 (Ex. A));

3. a certified copy of Wise's April 14, 2011 indictment (*id.* at 9-11 (Ex. B));

4. Wise's October 18, 2011 Petition to Enter Plea of Guilty (*id.* at 12-13 (Ex. B));

5. Wise's October 18, 2011 Judgment and Sentence (*id.* at 14-15 (Ex. B));

6. a certified copy of Wise's signed Covenant Not to Sue (*id.* at 16 (Ex. C)); and

7. a certified copy of the transcript of Wise's October 18, 2011 Plea - Sentence Hearing (*id.* at 17-27 (Ex. D)).[3]

---

[3]Each first page of Exhibits A, B, and D (documents 1, 3, and 7 in the list above) contains a certification from the Clerk of the Superior Court of Hall County that "the within is a true and correct copy of the original as it appears on file in this office." (*See* Doc. 37-2 at 5, 9, 17). Exhibit C (document 6) contains a certification from Lee Darragh, the District Attorney for Georgia's Northeastern Judicial Circuit who prosecuted Wise's criminal cases, that "the above Covenant Not to Sue is a true and correct copy of the original document at the time of the document's completion." (Doc. 37-2 at 16; *see id.* at 17). The remaining documents (2, 4 and 5), which are contained within Exhibits A and B, are not separately certified, although it is unclear whether the certifications on the first pages of Exhibits A and B are meant to apply to those three documents as well. Wise asserts that the Defendants' supporting documents "are not material, constitute hearsay, and are therefore inadmissible" and "are not certified." (Doc. 42 ¶¶ 2-6). The relevant documents are in fact certified, however, and as such they are admissible in support of Defendants' summary judgment motions. *See, e.g.*, *United States v. Byock*, 130 Fed. Appx. 594, 595 (3rd Cir. 2005) ("Here, the United States submitted certified copies of the IRS assessments against the [defendants,] who offered no evidence to suggest that the assessments were incorrect or to otherwise dispute the[m]. *The District Court concluded that the certified documents were sufficient to support granting the motion for summary*

Based on these documents, the following facts are undisputed.  A Hall County grand jury twice indicted Wise for acts committed while he was housed at the HCDC. (Doc. 37-2 at 2, ¶ 2).  The April 14, 2011 indictment charged Wise with "riot in a penal institution" for a November 5, 2010 incident in which he allegedly "act[ed] in a violent and tumultuous manner by fighting with Kevin Robinson," presumably a fellow inmate.  (*Id.* at 2, ¶ 2 & at 9-11).  The May 2, 2011 indictment charged Wise with felony obstruction and riot in a penal institution for a December 22, 2010 incident in which he allegedly "knowingly and willfully resist[ed] . . . Jourdan Smith, a correctional officer in the lawful discharge of his official duties, . . . by using his hands and fists to strike [the] officer on and about the face and head in violation of O.C.G.A. § 16-10-24 [Obstructing or hindering law enforcement officers]" and "act[ed] in a violent and tumultuous manner by [striking] . . . Smith . . . in violation of O.C.G.A. § 16-10-56 [Riot in a penal institution]."  (*Id.* at 2, ¶ 2 & at 5-7).  On October 18, 2011, Wise entered into a negotiated plea agreement, signed the Covenant Not to Sue, and pled guilty to the riot charge in the April 14 indictment, and the Hall County district attorney dismissed the obstruction and riot charges in the May 2 indictment.  (*Id.* at 2, ¶ 3 & at 8, 12-16).[4]

---

*judgment. We agree.*" (emphasis added)).

[4]Defendants assert that Wise signed the covenant not to sue "[a]s a part of the negotiated disposition . . . ." of his criminal indictments. (Doc. 37-2 at 3, ¶ 4).

8

Wise does not dispute these facts *per se*, although he objects to the form of Defendants' proof and how these facts impact his claims. (*See* Docs. 40-42). On August 27, 2013, Wise filed a statement of disputed material facts,[5] asserting in each of its eight paragraphs that because "the discovery period has only recently commenced, [he] has not had time to develop the factual record before the Court." (Doc. 41 ¶¶ 1-8).[6] Without offering supporting exhibits, Wise asserts that these material facts are disputed:

1. The covenant not to sue was not entered into voluntarily.

2. [He] lacked sufficient knowledge and experience, thereby rendering the covenant not to sue unenforceable.

3. [He] was not effectively represented by counsel in the state court criminal proceedings.

4. [His] criminal [defense] attorney did not draft the covenant not to sue.

5. [He] was in custody at the time of signing the covenant not to sue.

6. [He] had insufficient time to consider the covenant not to sue.

7. There is evidence of prosecutorial misconduct.

---

[5]Wise's responses to Bandy's summary judgment pleadings (Docs. 46, 46-1, 46-2) are materially indistinguishable from his responses to Charlton's (Docs. 40-42), and they are not discussed separately here.

[6]Wise also states that "Defendant failed to assert release and estoppel related to the covenant not to sue as an affirmative defense, thereby prejudicing [Wise's] position" (Doc. 41 ¶¶ 1-8), although, as noted above, it appears that Wise has abandoned this argument.

9

8.  Enforcement of the covenant not to sue is contrary to the public interest.

(*Id.*).

## IV. Discussion

### A. The Legal Framework

In *Town of Newton v. Rumery*, 480 U.S. 386 (1987), the Supreme Court affirmed a release-dismissal agreement similar in effect to the one at issue here[7] after concluding that the "agreement was voluntary, that there is no evidence of prosecutorial misconduct, and that enforcement of this agreement would not adversely affect the relevant public interests." *Id.* at 398. The Court deemed the following facts and considerations significant:

> Rumery is a sophisticated businessman. He was not in jail and was represented by an experienced criminal lawyer, who drafted the agreement. Rumery considered the agreement for three days before signing it. The benefits of the agreement to Rumery are obvious: he gained immunity from criminal prosecution in consideration of abandoning a civil suit that he may well have lost.
>
> Because Rumery voluntarily waived his right to sue under § 1983, the public interest opposing involuntary waiver of constitutional rights is no reason to hold this agreement invalid. Moreover, we find that the possibility of coercion in the making of similar agreements insufficient by itself to justify a *per se* rule against release-dismissal bargains. If there is such a reason, it must lie in some external public interest necessarily

---

[7]Although "[a] release of claims and a covenant not to sue serve different purposes[,]" *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005) (internal quotations omitted), the parties do not dispute that the *Rumery* framework controls here. *See infra.*

10

> injured by release-dismissal agreements.

*Id.* at 394. In a concurring opinion, Justice O'Connor noted the following:

> The knowledge and experience of the criminal defendant and the circumstances of the execution of the release, including, importantly, whether the defendant was counseled, are clearly relevant. The nature of the criminal charges that are pending is also important, for the greater the charge, the greater the coercive effect. The existence of a legitimate criminal justice objective for obtaining the release will support its validity. And, importantly, the possibility of abuse is clearly mitigated if the release-dismissal agreement is executed under judicial supervision.

*Id.* at 401-02 (O'Connor, J., concurring in part and concurring in the judgment).

After noting that "§ 1983 actions to vindicate civil rights may further significant public interests," four justices[8] "hesitate[d] to elevate more diffused public interests above Rumery's considered decision that he would benefit personally from the agreement." *Id.* at 394-95 (plurality opinion). The four justices stated, "The availability of [release-dismissal] agreements may threaten important public interests. They may tempt prosecutors to bring frivolous charges, or to dismiss meritorious charges, to protect the interests of other officials. But a *per se* rule of invalidity fails to credit other relevant public interests and improperly assumes prosecutorial misconduct." *Id.* at 395 (plurality opinion) (footnotes omitted). The four justices continued:

---

[8]Justice O'Connor, writing separately, concurred in each section of the majority opinion except for Sect. III-B, from which this and the following passages are quoted.

11

> The vindication of constitutional rights and the exposure of official misconduct are not the only concerns implicated by § 1983 suits. No one suggests that all such suits are meritorious. Many are marginal and some are frivolous. Yet even when the risk of ultimate liability is negligible, the burden of defending such lawsuits is substantial. Counsel may be retained by the official, as well as the governmental entity. Preparation for trial, and the trial itself, will require the time and attention of the defendant officials, to the detriment of their public duties. In some cases litigation will extend over a period of years. This diversion of officials from their normal duties and the inevitable expense of defending even unjust claims is distinctly not in the public interest. To the extent release-dismissal agreements protect public officials from the burdens of defending such unjust claims, they further this important public interest.

*Id.* at 395-96 (plurality opinion); *see id.* at 401 ("The defendants in a § 1983 suit may establish that a particular release executed in exchange for the dismissal of criminal charges was voluntarily made, not the product of prosecutorial overreaching, and in the public interest. But they must *prove* that this is so; the courts should not presume it as I fear portions of Part III-B of the plurality opinion may imply." (O'Connor, J., concurring in part and concurring in the judgment)).

In *Libman v. Avondale Estates*, 1:04-CV-2294-TWT, 2006 U.S. Dist. LEXIS 11658 (N.D. Ga. Mar. 3, 2006), this Court set out the *Rumery* voluntariness factors as follows:

> The *Rumery* plurality set forth the following factors to be considered in determining whether the release is voluntary: (1) the knowledge and experience of the criminal defendant; (2) whether the defendant was represented by counsel; (3) whether the defendant's attorney drafted the agreement; (4) whether the defendant was in custody at the time of

12

> signing the agreement; and (5) whether the defendant had time to consider the agreement. In her concurrence, Justice O'Connor suggested two additional factors: (6) the nature of the criminal charges; and (7) whether the agreement was formed under judicial supervision.

*Id.* at *10 (citations omitted). On appeal in *Libman*, the Eleventh Circuit addressed the release-dismissal agreement as follows:

> The claims against [the defendant] for violation of [the plaintiff's] constitutional rights and for malicious prosecution are barred by the release-dismissal agreement. All of the conduct that gives rise to these claims occurred prior to the execution of that agreement. A release-dismissal agreement will be enforced *if the party seeking enforcement can show* (1) that it was entered into voluntarily; (2) that there is no evidence of prosecutorial misconduct; and (3) that the enforcement of the release is in the public interest. *Town of Newton v. Rumery*, 480 U.S. 386, 398 (1987). Here, [the plaintiff] executed an agreement drafted by his own attorney and under the supervision of the trial judge assigned to the case. The release obviously serves the public interest in avoiding the expense of defending civil claims that may or may not be meritorious.

*Libman v. City of Avondale Estates*, 190 Fed. Appx. 774, 776-77 (11th Cir. 2006) (citation altered) (emphasis added). The parties appear to accept the above formulations as dispositive. (*See* Doc. 37-1 at 7; Doc. 40 at 5-6).

### B.   The Parties' Arguments

Defendants assert that not only was Wise represented by counsel during the plea negotiation process, but the "entirety of the negotiated plea arrangement, including the covenant not to sue, was effectuated under the supervision and approval of" Superior

13

Court Judge Jason Deal. (Doc. 37-1 at 8-9). They note that at Wise's plea hearing, the prosecutor stated:

> [W]e are submitting a nol-pros [sic] because pursuant to our negotiations, we have also obtained – I talked to [the] County [A]ttorney about this. The defendant has prepared a covenant or signed a covenant not to sue and I have prepared – I talked to Mr. Blalock [the County Attorney] about that, and he is satisfied with the language concerning an incident of December of 2011 in which there was clearly a case in which [Wise] was appropriately charged for obstruction of an officer and a riot in [a] penal [] institution and some other things.
>
> But after the [November 2010] incident for which [Wise] was charged, there was an incident involving . . . some correctional officers with the [HCDC]. And in order to just ensure that [the] matter be handled appropriately, they're agreeing [to] a covenant not to sue related to that incident or any incident while Mautious Wise has been incarcerated at [the HCDC] and that we can just close that case by nol-pros [sic].

(*Id.*; *see* Doc. 37-2 at 19-20).

Defendants argue that Wise's covenant not to sue satisfies the three *Rumery* enforcement criteria because Wise entered into it voluntarily, with the advice of counsel and without "any evidence of prosecutorial misconduct in the criminal cases or the negotiation of the covenant not to sue," and the covenant " 'obviously serves the public interest in avoiding the expense of defending civil claims that may or may not be meritorious.' " (Doc. 37-1 at 9-10 (quoting *Libman*, 190 Fed. Appx. at 777)).

Wise responds that "there are a legion of facts that Plaintiff must be allowed to develop and explore fully in discovery before the Court can dismiss his case

14

summarily," so that "at this early juncture, with discovery left to be completed, [granting Defendants' motions] would be unfairly premature and would deprive Plaintiff of the fact gathering and truth uncovering opportunities which form the bedrock of civil discovery and ultimately Rule 56." (Doc. 40 at 3). Wise argues separately that the covenant is unenforceable. (*Id.* at 5-10). Regarding the first of the three criteria for determining a covenant's enforceability—whether the party who relinquished his right to sue did so voluntarily—Wise adopts the Defendants' five-factor test and asserts that "nowhere in [their] summary judgment brief [do they] point to evidence or otherwise address the first factor, [Wise's] knowledge and experience." (*Id.* at 6). Wise concedes that he was represented by counsel when he signed the agreement, but notes that "Defendant[s] wholly fail[] to address the third factor, whether [his] attorney drafted the agreement." (*Id.* at 7).[9] With respect to the fifth factor, whether he had time to consider the covenant before signing it, Wise notes that the covenant is dated the same day as both the plea agreement and the plea

---

[9] Defendant[s'] motion is silent on who drafted the agreement, which is a factor the United States Supreme Court has said must be considered. Defendant[s have] clearly failed to discharge [their] burden as the [parties] seeking summary judgment. Plaintiff would like to depose the criminal defense attorney, the Hall County Attorney, and the district attorney to determine who drafted the agreement so this Court can apply real facts to the legal standard established by the Supreme Court.

(Doc. 40 at 7).

15

hearing, which "raises serious questions as to whether [he] had time to consider the agreement." (*Id.* at 8). Wise also asserts that Defendants have failed to offer any evidence regarding the fourth factor, whether he was in custody when he signed the covenant (*id.* at 7), but it is apparent that he was (*see* Doc. 37-2 Ex. D), a fact that militates against enforcement of the covenant.

Wise next argues that Defendants err by arguing that there is no evidence in the state court record to show prosecutorial misconduct, the second criterion for determining the enforceability of the covenant, because the relevant inquiry here is whether there is any evidence in "*the record before this Court*." (*Id.* at 8-9). Wise asserts that he "is entitled to explore this issue in discovery and allow this Court to make an independent determination based on evidence procured pursuant to the Federal Rules of Civil Procedure and . . . Evidence whether there is any evidence of prosecutorial misconduct." (*Id.* at 9). Finally, with respect to the public interests involved, Wise argues that Defendants "make[] another bold and conclusory statement [that] 'the public interest is well served by the enforcement of the covenant not to sue in this case,' " but otherwise give "the Court absolutely nothing." (*Id.* at 9-10 (citing Doc. 37-1 at 10)). They do "not discuss Plaintiff, the nature of his criminal case, or the reasons that would favor a covenant not to sue." (*Id.* at 10).

**C.**     **Defendants Have Not Carried Their Burden Of Establishing By**

16

### **Undisputed Evidence That The Covenant Not To Sue Is Enforceable.**

"Although discovery need not be complete before a court can grant summary judgment, summary judgment is proper only after the nonmovant is 'permitted an adequate opportunity to complete discovery prior to consideration of the motion.' " *United States v. Korman*, 08-81090-Civ-Ryskamp/Vitunac, 2009 U.S. Dist. LEXIS 66104, at *8 (S.D. Fla. Apr. 23, 2009) (quoting *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997)), *adopted by* 2009 U.S. Dist. LEXIS 51118 (S.D. Fla. June 16, 2009); *see Jones*, 120 F.3d at 253 ("The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."). Here, Defendants did not afford Wise an opportunity to complete discovery before filing their motions for partial summary judgment, which they did well before the discovery period had even begun. Nor have Defendants updated the record before this Court with new factual material obtained during the discovery process that is still ongoing.

Because Defendants rely on an affirmative defense, it is their burden to show that they have "remove[d] genuine doubt from the issue [of the enforceability of the covenant not to sue] altogether." *See 11,320.00 in United States Currency*, 880 F. Supp. 2d at 1322. Here, there are simply too many material issues that are not settled

by the record before the Court to allow summary judgment in Defendants' favor.[10]

There is no evidence as to who drafted the covenant not to sue; whether the twenty-year-old Wise (*see* Doc. 37-2 at 12) or his attorney had adequate knowledge and/or experience to understand the implications of the covenant; whether Wise had time to consider the covenant before signing it; whether the "prosecutor [was tempted] to bring frivolous charges . . . to protect the interests of other officials," *see Rumery*, 480 U.S. at 395 (plurality opinion); whether protecting Defendants from a civil rights action that may be frivolous—but just as well may not be, the determination of which most certainly depends upon the evidence developed during the discovery period—is the only factor relevant to whether the covenant not to sue is in the public interest; and whether the Hall County judge played any role in the covenant-not-to-sue process.[11]

It is also noteworthy that although Wise received a sentence of time served (approximately one year) after pleading guilty to the November 2010 riot charge, the

---

[10]The Court understands that many of the issues here involve matters largely or wholly within Wise's personal knowledge. This circumstance does not relieve Defendants of the burden of obtaining evidence by deposing Wise or through other discovery methods and of presenting that evidence in a form admissible to support their summary judgment motions. Even if reliance on the covenant not to sue is not an affirmative defense, Defendants have not offered a sufficient factual basis to conclude that there is no genuine issue of material fact for trial regarding the covenant's enforceability.

[11]Although, as noted above, the District Attorney mentioned the covenant not to sue at Wise's plea hearing, the Hall County judge did not question Wise about the covenant, nor is there any mention of it in Wise's Petition to Plead Guilty or in his Judgment and Sentence. (*See* Doc. 37-2 at 12-15, 19-26).

18

maximum sentence for a conviction on that charge in Georgia is twenty years (*see* Doc. 37-2 at 23-25), a factor that according to Justice O'Connor's concurrence in *Rumery* militates against enforcement of the covenant. *See Rumery*, 480 U.S. at 401 ("The nature of the criminal charges that are pending is also important, for the greater the charge, the greater the coercive effect[]" of a possible release-dismissal agreement. (O'Connor, J., concurring in part and concurring in the judgment)). Defendants have barely addressed these matters, other than to assert that there is no issue of material fact with respect to any of them. These conclusory assertions are insufficient to win the day. In short, Defendants have not brought forth facts to meet their burden to establish that the *Rumery* criteria for the enforcement of Wise's covenant not to sue have been met.

## V.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Charlton's and Bandy's motions for partial summary judgment (Docs. 37, 38) be **DENIED without prejudice**.

**SO RECOMMENDED** this 31st day of December, 2013.

                                                   /s/ *J. CLAY FULLER*
                                                   J. CLAY FULLER
                                                   United States Magistrate Judge

AO 72A
(Rev.8/82)